IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **VALDEZ LAMONT JORDAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LATOYA HUGHES,**<br><br>**Defendant.** | **Case No. 25-cv-02020-RJD** |

# MEMORANDUM AND ORDER

**MAGISTRATE JUDGE REONA J. DALY:**

Plaintiff Valdez Lamont Jordan, an inmate of the Illinois Department of Corrections currently incarcerated at Vienna Correctional Center, brings this civil rights action pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, the Rehabilitation Act (RA), 29 U.S.C. §§ 794-94e, and the Illinois Civil Rights Remedies Restoration Act, 775 ILCS 60/1, *et seq*. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally

[1] The Court has jurisdiction to screen Plaintiff's First Amended Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections and this Court.

construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The First Amended Complaint

Plaintiff asserts that while he was incarcerated at Pinckneyville Correctional Center (Pinckneyville), the law library, court zoom hearings, and other programs were located on the second floor of the "program building." (Doc. 12, p. 7). The second floor of the program building was accessible by stairs or by use of an elevator. (*Id.*). The elevator, however, was frequently out of order for extended periods of time. (*Id.*). Specifically, the elevator was not working from July 2023 through October 2023, and from January 2024 through April 2024. (*Id.*). The elevator was briefly repaired in April 2024 but by the end of April 2024, it was again not functional. (*Id.*). The elevator was also out of order in "mid-late June 2024." (*Id.*).

Plaintiff asserts that because of a back injury and gunshot wound to his left thigh, he suffers from "physical disabilities" and chronic pain. (Doc. 12, p. 6). Climbing stairs is difficult and painful and puts him at risk of further injury. (*Id.* at p. 7). During the time the elevator in the program building was broken in 2023 and 2024, Plaintiff was litigating a post-conviction petition and two Section 1983 civil rights lawsuits. (*Id.*). He had multiple court deadlines, and in order to conduct legal research and access his legal documents, he was frequently forced to take the stairs to the second floor. (*Id.* at p. 7-8).

Around August or September 2023, Internal Affairs called Plaintiff to the program building for a meeting on the second floor. (Doc. 12, p. 8). When Plaintiff arrived at the program building, he informed the sergeant that he needed to use the elevator to reach the second floor because of his disabilities. (*Id.*). The sergeant told Plaintiff that the

elevator was out of order and that Plaintiff would have to take the stairs or he would be issued a disciplinary report for refusing to speak with Internal Affairs and impeding an investigation. (*Id.*). Plaintiff then forced himself to climb the stairs. (*Id.*).

Plaintiff asserts that IDOC leadership and Pinckneyville staff have "long been on notice of the repeated broken elevator problem and the accommodation needs of disabled individuals to provide [them] access to the programs and services available to nondisabled individuals." (Doc. 12, p. 8). He states that whenever the elevator was broken, he and other individuals in custody would file grievances requesting access to the law library and programs without having to climb the stairs. (*Id.*). Plaintiff claims that because IDOC failed to make reasonable accommodations for him when the elevator was non-functioning, he suffered unnecessary and exacerbated pain by using the stairs to access the second floor. (*Id.*).

## Discussion

Based on the allegations of the First Amended Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** ADA and RA claim against Hughes for failing to accommodate Plaintiff's disability so that he could access legal resources located on the second floor of the program building at Pinckneyville, such as the law library and his stored legal documents.

**Count 2:** Illinois state law claim under the Civil Rights Remedies Restoration Act against Hughes for failing to accommodate Plaintiff's disability so that he could access legal resources located on the second floor of the program building at Pinckneyville, such as the law library and his stored legal documents.

**Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

## DISCUSSION

Under the ADA, "no qualified individual with a disability shall, because of that disability…be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The RA also prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. The analysis under the ADA and RA is the same, except that the RA includes as an additional requirement, the receipt of federal funds, which all states accept for their prisons. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (citing 29 U.S.C. § 705(2)(B)). Under both statutes, discrimination includes failure to accommodate a disability. *Jaros*, 684 F.3d at 672 (citation omitted).

Here, Plaintiff alleges that he suffers from physical disabilities and that the prison failed to accommodate that disability by forcing him to climb stairs to access the second floor of the program building whenever the elevator was not functioning, resulting in pain and suffering. These allegations are sufficient to articulate a colorable ADA and RA claim. Although Plaintiff is no longer in custody at Pinckneyville and cannot seek declaratory relief, compensatory damages may still be available to him, and so, the Court will not dismiss his ADA or RA claims at this time. *See Wilke v. Cole*, 630 F. App'x 615, 619–20 (7th Cir. 2015); *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 862–63 (7th Cir. 2018).

---

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Count 1 will proceed against Director Hughes in her official capacity.

Under the Illinois Civil Rights Remedies Restoration Act (Restoration Act), 775 ILCS 60/1, *et seq.*, a violation of federal discrimination statutes, such as the ADA and RA, "shall constitute a violation" of the Restoration Act. 775 ILCS 60/15. The Restoration Act permits damages for "past, current, and future monetary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other monetary losses, and any amount that may be determined by a jury, or a court sitting without a jury." 775 ILCS 60/20. Plaintiff's Restoration Act claim, Count 2, survives screening against Hughes, in an official capacity.

## Disposition

**IT IS HEREBY ORDERED** that the First Amended Complaint survives preliminary review pursuant to 28 U.S.C. § 1915A. **COUNTS 1** and **2** shall proceed against Defendant Latoya Hughes in her official capacity.

The Clerk of Court shall prepare for Latoya Hughes: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Because this suit addresses claims involving Plaintiff's medical condition, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**Pursuant to Administrative Order No. 244, Defendant needs only respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 10, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.